# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RICHI ORLANDO BRIONES,

    Plaintiff

v.

JAMES DZURDENDA, et al.,

    Defendants

Case No.: 2:23-cv-00417-APG-DJA

**Order (1) Granting Plaintiff's Motion for a Preliminary Injunction, (2) Denying Plaintiff's Motion for a Temporary Restraining Order, (3) Denying Defendants' Motion for Referral to a Settlement Conference Without Prejudice, and (4) Striking Plaintiff's Pro Se Motions**

[ECF Nos. 94, 95, 106, 111, 112]

Richi Briones is a prisoner at High Desert State Prison (HDSP) in Indian Springs, Nevada, serving two life sentences without the possibility of parole for two murders. ECF Nos. 45 at 5, 15; 96-1 at 2-3. He entered a plea of guilty but mentally ill pursuant to Nevada Revised Statutes § 174.063, and in his judgment of conviction, the Nevada state court ordered that he receive treatment for his mental illness during his incarceration. ECF No. 96-1 at 2-3.

Briones is diagnosed with several mental illnesses, including schizoaffective disorder (bipolar type), post-traumatic stress disorder, anxiety, and an unspecified major neurocognitive disorder. ECF No. 98-1 at 15. A psychiatrist described his schizoaffective disorder as a "severe, chronic psychiatric illness" that leads to "severe symptoms of psychosis consisting of severe paranoid delusions and escalating severe command auditory and visual hallucinations." *Id.* at 13-14. His mental health history includes multiple suicide attempts and in-patient psychiatric hospitalizations. One hospitalization occurred in late 2016 because he poured lighter fluid on himself and planned to walk into traffic and set himself on fire. *Id.* at 13. He was hospitalized again in 2017 for acute psychosis with suicidal and homicidal ideations, and 11 days after he was

discharged, he was arrested for the two murders to which he pleaded guilty. *Id.* Further, he has an arachnoid cyst in his brain that has enlarged over time and may contribute to his psychosis and the impaired control of his behavior. ECF No. 98-7 at 3-5.

While incarcerated, Briones began receiving a low dose of medication called Geodon (also called ziprasidone) to treat his psychosis in 2020. *Id.* at 8, 12-13. Soon after, Briones indicated his medication dosage was not effective. *Id.* at 13. But when he complained to the Nevada Department of Corrections (NDOC) psychiatrist, defendant Dr. Wade Exum, Dr. Exum described Briones as "med-seeking" and refused to increase his dosage. *Id.* A psychiatrist retained by Briones to review his treatment noted that his current dose of Geodon is "very low" and that, because NDOC does not allow him to take it with food, his body is not absorbing much of the medication. *Id.* at 9.

Briones filed grievances over several years related to complaints of inadequate psychiatric care and medication. In one, he asked that the NDOC medical team review his prior medical records and prescribe him psychiatric medication he had received in the past. ECF No. 107-3 at 3-4, 8-9. That grievance was denied. *Id.* at 6-7. In another, he complained that he had "not received medically necessary or appropriate treatment for [his] various mental illnesses" and that "staff ignore [his] requests." ECF No. 107-4 at 11, 13. That grievance was also denied, where the NDOC staff noted in 2023 that Briones had been receiving ziprasidone "continuously since initially ordered." *Id.* at 8. In many grievances, he cited back to his mentally ill plea to justify seeking different medication that will address his mental illnesses. *Id.* at 13; ECF Nos. 107-3 at 12; 107-5 at 11.

As of December 2022, Briones reported experiencing visual and auditory hallucinations due to his psychosis despite receiving Geodon for almost three years. ECF No. 98-7 at 10. The

visual hallucinations were of "poorly-formed shadow-like objects that move about in his peripheral vision." *Id.*  The auditory hallucinations were loud, derogatory human voices that threatened him harm and were "nearly constant" while he was awake. *Id.*  He began wearing earphones playing music or television at maximum volume to try and drown them out. *Id.*

Briones also was experiencing symptoms due to his post-traumatic stress disorder (PTSD) in December 2022.  He reported to a psychiatrist that he had trauma-related nightmares almost every night. *Id.* at 12.  These issues traced back years.  In 2021 he filed a grievance because the treatment for his PTSD was not preventing flashbacks and nightmares that kept him from sleeping. ECF No. 107-3 at 8, 10.  The psychiatrist retained by Briones noted that the only PTSD treatment Briones was receiving was a medication called Prazosin, which the psychiatrist claimed the Food and Drug Administration has not approved to treat PTSD. ECF No. 98-7 at 11.

Despite Briones' on-going symptoms, he argues there was no reevaluation of his psychiatric treatment, which the defendants do not dispute. ECF No. 95 at 6.  The defendants also do not dispute that NDOC no longer has a full-time psychiatrist on staff, nor has it contracted with an outside psychiatrist to provide treatment to inmates since August 2025. *Id.* at 7-8.

Briones sued the defendants, who are various NDOC officials.  He filed an amended complaint on November 7, 2024, alleging that HDSP officials' deliberate indifference and failure to provide him with adequate psychiatric health care and medication violates the Eighth Amendment. ECF No. 45 at 22-23.  In March 2025, the parties entered a stipulation where they agreed an outside psychiatrist would evaluate Briones to determine whether his medication needed to be changed. ECF No. 58 at 2.

3

Briones alleges, and the defendants do not dispute, that this appointment with the outside psychiatrist never occurred. ECF No. 95 at 8. In recent months, his mother reports that Briones talks only about his delusions during their phone calls, unlike earlier in his incarceration when he was "sometimes able to have normal conversations." ECF Nos. 96-2 at 2; 96-3 at 2. Briones' attorney met with him in April 2026 and also noted that his paranoid and delusional beliefs were more pronounced "to the point where it was difficult to have a normal conversation about his lawsuit." ECF No. 108-1 at 2. Briones told his attorney he destroyed his electronic tablet because cartels and government agencies monitoring him were posting messages on it. *Id.*

Briones now moves for a temporary restraining order or preliminary injunction on his inadequate psychiatric care claim against the HDSP defendants. He seeks several forms of equitable relief. He requests that a licensed psychiatrist evaluate him and recommend treatment, and that the psychiatrist be able to review Briones' medical file, his mentally ill plea, and the psychiatric report in support of that plea. He asks that the treatment plan be provided to all NDOC providers, to his counsel, and be placed in his medical file, and that NDOC follow the plan. He requests that NDOC prioritize hiring or contracting with a licensed psychiatrist. Finally, pending a psychiatric evaluation, Briones asks that he be housed at the Mental Health Unit at Northern Nevada Correctional Center and that he remain there until a psychiatrist or psychologist determines such care is no longer necessary.

The defendants oppose the motions, arguing that Briones has not exhausted his administrative remedies under the Prison Litigation Reform Act (PLRA). They also argue that he has failed to show imminent irreparable harm, and that the balance of equities and public interest favor them. They also move to refer this case to a settlement conference.

Because Briones satisfies the requirements for a preliminary injunction, and because the defendants have not shown a likelihood of success on their PLRA affirmative defense, I grant the preliminary injunction. I order that the defendants hire or contract with a psychiatrist to evaluate Briones and develop a new treatment plan for him. I further order the defendants to comply with that treatment plan. Accordingly, I deny his motion for a temporary restraining order as moot. I also deny the defendants' motion for a referral to a settlement conference without prejudice. Finally, I strike Briones' pro se motions because he is represented by counsel.

**I.        BRIONES MOTION FOR A PRELIMINARY INJUNCTION**

To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Because Briones seeks to compel the defendants to act prior to final judgment, he seeks a mandatory injunction. *Doe v. Synder*, 28 F.4th 103, 111 (9th Cir. 2022). To receive a mandatory injunction, he "must establish that the law and the facts clearly favor [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (emphasis omitted). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result." *Doe*, 28 F.4th at 111 (quotation omitted).

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

5

**A. Briones has established that the law and the facts clearly favor his position.**

   *1. Briones has established that the law and the facts clearly favor the position that the HDSP defendants are not providing adequate psychiatric care under the Eighth Amendment.*

The government is obligated "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. at 104. To establish a claim for deliberate indifference to serious medical needs, a plaintiff must show (1) a "serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) the defendant was subjectively "deliberately indifferent" to the need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotations omitted). This second prong requires that the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Broadly, the defendants do not challenge that the law and the facts favor Briones' position on both prongs of his Eighth Amendment claim, which constitutes consent that I rule for him. LR 7-2(d). And on the merits of Briones' arguments, the law and the facts also clearly favor his position.

Briones has shown that he has a serious medical need and meets the first prong of his Eighth Amendment claim. He provided psychiatric reports diagnosing him with schizophrenic disorder, PTSD, and anxiety. ECF Nos. 98-1 at 15; 98-7 at 7, 10. In the past, when these mental illnesses went untreated, he attempted suicide. Both his attorney and his mother have reported

6

that his delusions have become more pronounced recently, such that it is much more difficult for him to talk about anything else.

Briones also satisfies the second prong. Several documents show that the defendants knew that Briones needed but was not receiving sufficient care for his psychiatric conditions. His mental health guilty plea identified that Briones has mental illnesses and ordered that he receive psychiatric treatment. Briones has submitted several grievances to the defendants referencing that he is not receiving the proper psychiatric medication, contravening his mental health guilty plea. ECF Nos. 107-4 at 5-7, 10, 13; 107-5 at 4, 7-8, 11. The defendants do not contest that Briones' current psychiatric treatment plan and medication create a risk to his health and that they have not changed the plan despite that risk. *See Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022) (stating that "continuation of the same treatment in the face of obvious failure" is deliberate indifference); *Porretti v. Dzurenda*, 11 F.4th 1037, 1043, 1049 (9th Cir. 2021) (finding an inmate had shown a likelihood of success on an Eighth Amendment inadequate medical care claim where the prison stopped providing psychiatric medication as prescribed by the inmate's doctor prior to his incarceration). They also do not counter Briones' expert's report that his current treatment for his psychosis and PTSD is inadequate, nor do they provide their own expert report that states his current treatment is adequate. *Cf. Poretti*, 11 F.4th at 1048 (noting that a plaintiff fails to demonstrate deliberate indifference when his medical expert has a "mere disagreement of medical opinion" with the defendants' expert). Additionally, they stipulated over a year ago to have an outside psychiatrist evaluate Briones, which they have failed to schedule, showing knowledge and disregard of his health risk. Therefore, Briones has established that the law and the facts clearly favor his position.

2.  *The defendants have not shown a likelihood of success on their affirmative defense of PLRA exhaustion.*

Nonetheless, the defendants oppose granting a preliminary injunction because they argue Briones has not exhausted his administrative remedies under the PLRA.  PLRA exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211 (2007).  When the non-moving party raises an affirmative defense in opposition to a motion to a preliminary injunction, "once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

The PLRA requires that an inmate exhaust all "administrative remedies as are available" before bringing a claim related to prison conditions. 42 U.S.C. § 1997e(a).  "Exhaustion must be 'proper.' This means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  Thus, the inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  "The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (citing *Jones*, 549 U.S. at 218).  The date the operative complaint was filed controls the PLRA exhaustion analysis. *Saddozai v. Davis*, 35 F.4th 705, 706, 710 (9th Cir. 2022).

NDOC's grievance process is governed by Nevada's Administrative Regulation (AR) 740, effective April 28, 2022. ECF No. 107-1 at 2.  That process has three levels through which

the inmate must proceed to exhaust his administrative remedies: an Informal Grievance, a First Level appeal, and a Second Level appeal. *Id.* at 11-16.  The grievance must "factually demonstrate a loss or harm." *Id.* at 4.  This is insufficient guidance as to the factual specificity required in a grievance, so an NDOC inmate's grievance is properly specific if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010); *Malone v. Janssen Biotech, Inc.*, No. 2:22-cv-01089-APG-DJA, 2024 WL 2028010, at *2 (D. Nev. May 5, 2024).

Because PLRA exhaustion is an affirmative defense, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).  "Once the defendant has carried that burden, . . . the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

The defendants identify only one grievance Briones fully exhausted related to his medical issues by the time he filed his amended complaint on November 7, 2024.  Briones received a response to his Level 2 appeal of Grievance 2006-31-54000 (Grievance '000) on June 4, 2024.  ECF No. 107-8 at 2.  Briones does not dispute this is his only fully exhausted grievance.  But Grievance '000 does not mention his mental illnesses or his psychiatric treatment. *Id.* at 3, 6-7, 9, 11.  In Grievance '000, Briones states he is not receiving proper treatment for his arachnoid cyst in his brain, high blood pressure, or his back pain. *Id.*  This does not put the defendants on adequate notice of the problem he seeks to redress in this motion, that he is not receiving proper psychiatric care for his mental illnesses.

The burden thus shifts to Briones.  He responds that NDOC's administrative procedures did not provide him with an available avenue for relief.  "A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016).  "If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Sapp*, 623 F.3d at 823.  "To fall within this exception, . . . the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

There is an "inherent tension" here because the defendants bear the burden of showing a likelihood of success on the merits of their affirmative defense, yet within that merits determination Briones bears the burden of establishing the exception to the affirmative defense. *See California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022).  But "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Therefore, to succeed on his motion for a preliminary injunction under this exception, Briones must establish that the law and facts clearly favor the position that the prison's administrative appeals process was unavailable to him because NDOC officials improperly screened his grievances.  Two grievances meet this burden: Grievance 2006-31-53573 (Grievance '573) and Grievance 2006-31-53819 (Grievance '819).

/ / / /

/ / / /

i.      The law and facts clearly favor the position that Grievances '573 and '819 put the defendants on notice of Briones' inadequate psychiatric care claim.

For a grievance to sufficiently exhaust a claim that a prisoner now pursues in federal court, it must "put[] the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824.  Grievance '573 alerted the defendants that Briones claimed he was not receiving the psychiatric care he needed despite his mentally ill plea.  He stated that "since [he] entered the custody of NDOC, [he] [has] not received medically necessary or appropriate treatment for [his] various mental illness" and further references his "mental health issues" and "mentally ill plea" throughout the grievance. ECF No. 107-4 at 5, 10, 17.

NDOC's response to Grievance '573 shows that it knew this grievance was tied to Briones' psychiatric medication.  A prison's response to a grievance is evidence that the prison was on notice of the alleged deprivation. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). In *Reyes*, a prisoner sued members of the prison's Pain Management Committee over their decision to deny him morphine. *Id.* at 656.  The prisoner's grievances did not mention the Pain Management Committee and only referred to the prescribing doctor's denial of morphine. *Id.* at 658.  But the prison's responses cited the Pain Management Committee's decision when denying the prisoner's grievances, so the Ninth Circuit held that the grievance satisfied the PLRA exhaustion requirement for a suit against the Pain Management Committee members because the prison had "full notice of the alleged deprivation." *Id.* at 659.

Here, NDOC's response to Grievance '573 noted how the court ordered that Briones receive mental health treatment, that he had multiple visits from mental health providers, and listed four "[p]sychiatric medications" he has "been given continuously since ordered." ECF No.

107-4 at 8.  Thus, NDOC had full notice of Briones' claim that he was not given proper medication and treatment to address his psychiatric conditions.

For similar reasons, Grievance '819 also put the defendants on notice of his claim. Grievance '819 raises issues of "missing medication" for Briones' "mood" despite a court order and his "mentally ill plea." ECF No. 107-5 at 4, 7-8, 11, 19.  In response, NDOC noted his prescriptions of the four psychiatric medications listed in its response to Grievance '573 and that they had "all been renewed and are current." *Id.* at 5.  Therefore, Briones has established that the law and the facts clearly favor the position that Grievances '573 and '819 would have been sufficient to exhaust his administrative appeals for his inadequate psychiatric care claim against the HDSP defendants.

ii.     <u>The law and the facts clearly favor the position that Grievances '573 and '819 were improperly screened.</u>

As relevant to PLRA exhaustion, Grievances '573 and '819 followed identical procedural pathways.  Briones first filed an Informal Grievance, which was denied on the merits. ECF Nos. 107-4 at 14-15, 17; 107-5 at 9, 11, 13.  Briones then filed a First Level Grievance, which was also denied on the merits. ECF Nos. 107-4 at 8, 11, 13; 107-5 at 5, 7-8.  Finally, Briones filed a Second Level Grievance, which was not denied on the merits but "rejected" due to procedural deficiencies. ECF No. 107-4 at 2, 5-6; 107-5 at 2,[1] 4.  Grievances '573 and '819 were rejected on

---

[1] The rejection of Grievance '819 is listed as a rejection for a "Level 1" Grievance. ECF No. 107-5 at 2.  This is NDOC's second reply to the First Level Grievance to Grievance '819.  On the record before me, this appears to be a typographical error and should instead be a rejection for Briones' Level 2 Grievance of Grievance '819.  The rejection was issued after Briones received a response on his First Level Grievance and submitted his Second Level Grievance. NDOC denied his First Level Grievance on August 1, 2023. *Id.* at 5.  Briones signed his Second Level Grievance on October 19, 2023. *Id.* at 4.  NDOC then issued its rejection of Grievance '819 on November 2, 2023. *Id.* at 2.  The defendants provided no other documents issued by NDOC after Briones' signed his Second Level Grievance, so the November 2 rejection is likely

February 21, 2024 and November 2, 2023, respectively, before Briones filed his amended complaint. ECF Nos. 107-4 at 2; 107-5 at 2.  The listed justifications for both rejections were identical:

> Missing Documents: Per AR 740.08 number 4D(5), all documentation and factual allegations available to the Offender must be submitted at this level with the grievance.  You have failed to attach all prior submitted documents to support your claim.

> Instructions: Please correct and resubmit on a new Grievance . . . [and] attach all previously submitted documents including prior submitted grievance(s), attach proof of claim and Official Response(s) under this grievance number, the prior DOC 3098 Improper Grievance Memo(s) and/or prior responses under this grievance number, and all attachments so that this can be fully researched.

ECF Nos. 107-4 at 2 (emphasis omitted); 107-5 at 2 (emphasis omitted).

The law and the facts clearly favor the position that these two grievances were improperly screened.  The regulation listed for the rejection, AR 740.08 number 4D(5), does not exist. *See* ECF No. 107-1 at 11-13.  But there is an AR 740.08(4)(D) and an AR 740.08(5). *Id.* at 12.  AR 740.08(4)(D) is irrelevant to these grievances because it discusses the timeline for filing grievances relating to sexual abuse and disability discrimination claims. *Id.*

AR 740.08(5) appears to be the regulation the prison official was attempting to cite.  It states that "[a]ll documentation and factual allegations available to the offender must be submitted at this level with the grievance." *Id.*  The "level" this regulation refers to is not the Second Level, the level of Briones' grievances that the rejections addressed.  The "level" under AR 740.08(5) refers to the Informal Level because AR 740.08 deals only with regulations relating to the Informal Grievances. *Id.* at 11.  AR 740.10 is the section of the NDOC regulations

---

NDOC's reply to it.  AR 740 does not provide a way prisoners can submit a second First Level Grievance for the same grievance. *See* ECF No. 107-1 at 13-16.  The only listed method a prisoner can appeal a First Level response is using a Second Level Grievance form. *Id.* at 15.

that establishes the procedures for Second Level Grievances. *Id.* at 15.  AR 740.10 does not state that prisoners must submit other documentation alongside the Second Level grievance itself, such as the prior grievances and responses. *See id.* at 15-16; *cf. Sapp*, 623 F.3d at 825-26 (finding that a prison properly screened a grievance for failing to attach a form because the "regulations allow an appeal to be rejected if 'necessary supporting documents are not attached'" (quoting the prison's regulations)).  In fact, it requires the prison's Grievance Coordinator to "forward copies of all related documents and the appeal to the respective Deputy Director for review." *Id.* at 15.

Therefore, the law and the facts clearly favor the position that NDOC's rejection of his Second Level Grievances for Grievances '573 and '819 is unsupported by the applicable regulations and thus an improper screening. *See Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010) (holding that a prisoner's administrative remedies were unavailable when the prison official denied an intermediate appeal of a grievance by citing the incorrect regulation). Ultimately, Briones has established the law and the facts clearly favor the position that PLRA exhaustion was unavailable for his grievances relating to his psychiatric care.

**B. Briones has shown a likelihood of irreparable harm.**

The defendants argue that Briones is not facing imminent threat of irreparable injury. But Briones has shown that the defendants are depriving him psychiatric care in violation his Eighth Amendment rights, and "the deprivation of a prisoner's constitutional right to adequate medical care is sufficient to establish irreparable harm." *Porretti*, 11 F.4th at 1050 (simplified); *see Elrod v. Burns*, 427 U.S. 347, 373 (1976) (a violation of constitutional rights "unquestionably constitutes irreparable injury").  A psychiatric evaluation from 2023 notes how Briones' current treatment is inadequate and that he suffers from visual and auditory hallucinations from his psychosis and experiences trauma-related nightmares due to his PTSD.

14

ECF No. 98-7 at 10, 12.  Briones also attempted suicide several times prior to his incarceration due to "repeated command auditory hallucinations with suicidal content, and an accompanying urge to escape his increasingly disturbing paranoia and auditory and visual hallucinations," including one attempt a few months before his arrest. ECF No. 98-1 at 9, 13.  "Debilitating symptoms like paranoid delusions [and] auditory hallucinations" along with the risk of suicide constitutes irreparable harm. *Porretti*, 11 F.4th at 1050 (simplified).  These symptoms and increased risk of suicide together qualify as "extreme or very serious damage" to Briones. *See Doe*, 28 F.4th at 111 (quotation omitted).  The defendants have not indicated they will soon be able to replace the psychiatrist that stopped working with NDOC last August or that they are working to schedule an appointment with another psychiatrist to evaluate Briones as required by the parties' March 2025 stipulation.  Without a concrete plan to address Briones' psychiatric concerns, these on-going mental health risks and symptoms constitute irreparable harm and require injunctive relief.

**C. The balance of the equities and public interest weigh in favor of Briones.**

"The third and fourth factors of the preliminary-injunction test–balance of equities and public interest–merge into one inquiry when the government opposes a preliminary injunction." *Porretti*, 11 F.4th at 1050.  The "balance of equities" concerns the burdens or hardships to Briones compared with the burden on the defendants if I order an injunction. *Id.*  "The 'public interest' mostly concerns the injunction's impact on nonparties rather than parties." *Id* (simplified).

Granting the preliminary injunction will place some burden on the defendants.  Paying an outside psychiatrist to evaluate and develop a treatment plan for Briones imposes costs on NDOC.  Transferring Briones to the Mental Health Unit at the Northern Nevada Correctional

Center is also a logistical burden.  But Briones' persistent psychotic symptoms outweigh the costs to the defendants to hire another psychiatrist to evaluate him, to potentially follow a new psychiatric treatment plan for Briones, or to transfer him to the Mental Health Unit. *See id.*

Further, the public interest supports an injunction.  "The public has an interest in ensuring the continued dignity of individuals incarcerated in federal prisons and inherent in that dignity is the recognition of serious medical needs, and their adequate and effective treatment pursuant to the Eighth Amendment's mandated standard of care." *Id.* (simplified).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (simplified).  Additionally, properly treating Briones' psychiatric diagnoses will decrease the likelihood he will commit acts that harm others. *See* ECF No. 98-1 at 13 (noting Briones was released from a psychiatric in-patient facility 19 days prior to his arrest for the two murders in 2017 and that Briones was hospitalized for psychosis in 2016 after he poured lighter fluid on himself with plans to set himself on fire and walk into traffic).

For all these reasons, I grant Briones' motion for a preliminary injunction, the scope of which is detailed below.

**II.     BRIONES' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Briones also moved for a temporary restraining order for the same relief in his motion for a preliminary injunction.  I deny that motion as moot as I am granting his motion for preliminary injunction.

**III.    DEFENDANTS' MOTION FOR A REFERRAL TO A SETTLEMENT
         CONFERENCE**

The defendants move to refer this case to a settlement conference before a Magistrate Judge, and Briones opposes.  In my experience, settlement conferences are unproductive unless

both parties want to participate. Because Briones resists participation here, I deny the motion without prejudice. However, I strongly encourage the parties to discuss resolving the case outside of litigation, even if it does not occur in a formal settlement conference. Additionally, if all parties are now or soon amenable to a settlement conference, they may file a stipulation requesting one.

**IV.    BRIONES' PRO SE MOTIONS**

Briones filed two pro se motions despite being represented by counsel. ECF Nos. 111, 112. Under Local Rule IA 11-6(a), "once an attorney makes an appearance on behalf of a party, that party may not personally file a document with the court; all filings must thereafter be made by the attorney." Accordingly, I strike Briones' two pro se motions.

**V.    CONCLUSION**

I THEREFORE ORDER that plaintiff Richi Orlando Briones' motion for a preliminary injunction **(ECF No. 95) is GRANTED**.

I FURTHER ORDER that, **by July 6, 2026**, the defendants must hire or contract with a psychiatrist who must conduct a comprehensive evaluation of Briones and recommend a course of treatment, which may include medication, referrals to other providers, and regular monitoring of Briones and his medication. If the defendants must transfer him to another unit or prison to have a psychiatrist evaluate Briones, they may.

I FURTHER ORDER that the defendants must provide all of Briones' medical records that they have to the psychiatrist prior to the evaluation.

I FURTHER ORDER that Briones' counsel may provide documents to the defendants that are relevant to Briones' diagnosis or treatment prior to the evaluation, and the defendants must provide those documents to the psychiatrist before Briones' evaluation.

I FURTHER ORDER the defendants to follow the treatment plan prescribed by the psychiatrist.  If the defendants can justify a necessary reason to deviate from a portion of the plan, they must adopt a reasonable alternative to that portion.  Any such deviation must be reported to Briones' counsel within 10 days.

I FURTHER ORDER the defendants to file the psychiatrist's report on CM/ECF under seal, provide a copy to Briones' counsel, and file it in Briones' NDOC medical file.

I FURTHER ORDER the parties to file a Joint Status Report by **July 21, 2026** confirming they have complied with this order.

I FURTHER ORDER that Briones' motion for a temporary restraining order **(ECF No. 94) is DENIED as moot**.

I FURTHER ORDER that the defendants' motion for a referral to a settlement conference **(ECF No. 106) is DENIED without prejudice**.

I FURTHER ORDER that Briones' emergency motions for an immediate restraining order and injunction **(ECF Nos. 111, 112) are STRICKEN**.

DATED this 3rd day of June, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE